FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 2 0 2011 ★

BROOKLYN OFFICE

**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

TRICIA WILKINSON & GREGORY WILLIAMS,

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER
ALBERT ROMANO, shield # 22490, SERGEANT
WALTER A. ROBERTS, shield # 3340, JOHN DOES 1-
20,

Defendants.

--------------------------------------------------------------- x

**COMPLAINT**

**CV 11 - 2448**

Jury Trial Demanded

KORMAN, J.

POHORELSKY, M.J.

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this civil rights action against the City of New York and

numerous New York City Police Officers of the Emergency Services Unit ("ESU") and the 70th

Precinct alleging that defendants violated their rights under 42 U.S.C. § 1983, the Fourth and

Sixth Amendments to the United States Constitution and New York state law.  Defendants.

among other things, entered plaintiffs' home without a warrant, used excessive force on them,

falsely arrested them for possession of a firearm, ransacked their home and destroyed their

property and maliciously prosecuted plaintiff Williams.  The charges against Williams were

dismissed on March 30, 2011 and the charges against Wilkinson were adjourned in

contemplation of dismissal on April 6, 2011.

2.      Plaintiffs suffered significant damages in addition to physical injuries,

emotional distress and the trauma of incarceration.  Defendants, by alleging that plaintiffs were

in possession of a firearm, resulted in the Administration for Children's Services seizing

plaintiffs' two young children, ages 5 and 10, and placing them in foster care.  To this day,

defendants are fighting in Family Court, Kings County to have their children returned to them.

Moreover, as a result of the arrests, plaintiff Wilkinson lost her job as a home health aide and plaintiff Williams was replaced at a barber shop where he cut hair in an independent contractor capacity. Plaintiffs seek compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

3.   This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Sixth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

4.   Plaintiffs invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide their New York state law claims of false arrest, assault, battery, trespass, conversion, malicious prosecution, intentional infliction of emotional distress and vicarious liability which form part of the same case and controversy as their federal claims under Article III of the United States Constitution.

5.   With respect to plaintiffs' state law claims, a notice of claim was duly filed with the City of New York within 90 day of the incident at issue, more than 30 days have elapsed since such filing and the City has not offered to settle plaintiffs' state law claims.

6.   Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to plaintiffs' claims occurred in this District and because some or all of the defendants reside in this District.

## PARTIES

7.   Plaintiffs are United States citizens who reside in Brooklyn.

8.   The City of New York is a municipal corporation organized under the laws of the State of New York.

2

9.      Police Officer Albert Romano, Sergeant Walter A. Roberts and John Does 1-20 are New York City Police Officers employed in either ESU or the 70th Precinct Defendants were acting under color of state law and in their capacities as New York City Police Officers at all relevant times.  Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

10.     On January 28, 2011, at approximately 9:00 a.m., defendants broke down the door to plaintiffs' apartment, number C6, at 421 East 21st Street, in the Flatbush section of Brooklyn.

11.     Plaintiffs' two young boys, ages 5 and 10, were in school when defendants entered.

12.     Some of the ESU defendants, while the other defendants watched, took plaintiffs to the ground and punched and kicked them, causing physical injuries and breaking one of Wilkinson's teeth.

13.     Some of the officers, including possibly Officer Romano and Deputy Inspector Ralph Monteforte (commanding officer of the 70th Precinct) told plaintiffs that if they did not cooperate and tell them where the drugs and weapons were, they would have plaintiffs' children "taken away."

14.     One of the defendants -- possibly Romano -- told Wilkinson that, if she cooperated, he would let her go and blame everything on Williams.

15.     Although defendants thoroughly searched and ransacked plaintiffs' home, they did find anything illegal in the home.

3

16.     Officers took plaintiffs to the 70th Precinct and put them in separate cells.

17.     Two male, black officers and a white, female officer in plainclothes wearing gold badges interrogated Wilkinson.

18.     Williams was not interrogated because he invoked his right to counsel.

19.     While plaintiff was held in a cell in the precinct, Officer Romano, pursuant to an agreement with Sergeant Roberts and with the acquiescence of the other defendants, misrepresented in police reports that, on January 28, 2011, inside plaintiffs' apartment, Roberts observed a "male individual" wearing a white shirt throw a plastic bag on the roof a building across an alley and that the bag contained a firearm and ammunition. Defendants also falsely claimed that they recovered marijuana in the residence.

20.     Defendants' motives in arresting plaintiffs were to have plaintiffs convicted of and punished for crimes they did not commit, to obtain overtime compensation and to obtain credit for a firearms arrest.

21.     On January 29, 2011, at approximately 1:00 a.m., officers took plaintiffs to Brooklyn Central Booking.

22.     Plaintiffs were held in cells in Brooklyn Central Booking which were severely overcrowded, filthy and infested with pests. The toilets were covered in feces, urine and other types of human discharge and there were no beds or cots for plaintiff and the other detainees to sleep on. Plaintiffs slept on the floor.

23.     While plaintiffs were in Central Booking, Officer Romano, pursuant to an agreement with Sergeant Roberts and with the acquiescence of the other defendants, misrepresented to the Kings County District Attorney's Office that, on January 28, 2011, inside plaintiffs' apartment, Roberts observed a "male individual" wearing a white shirt throw a plastic

4

bag on the roof a building across an alley and that the bag contained a firearm and ammunition. Romano also falsely claimed that defendants recovered marijuana in the residence.

24.   Defendants' purposes in commencing bogus prosecutions against plaintiffs was to have plaintiffs convicted of and punished for crimes they did not commit, to obtain overtime compensation and to obtain credit for a firearms arrest.

25.   Officer Romano signed a criminal court complaint swearing to the truth of his false allegations.

26.   Williams was charged with felony possession of a firearm, misdemeanor possession of a firearm, possession of pistol ammunition and possession of marijuana.

27.   Wilkinson was charged with misdemeanor possession of a firearm and possession of pistol ammunition.

28.   On January 29, 2011, at approximately 1:00 a.m., plaintiffs were arraigned in Criminal Court, Kings County.

29.   The judge set bail on Williams and released Wilkinson on her own recognizance.

30.   Williams was taken to Rikers Island.  While being admitted into Rikers, Williams was unlawfully strip searched in front of other inmates.

31.   Correction officers ordered Williams to strip nude, squat, bend over, spread his buttocks and cough.

32.   After the strip search, Williams underwent a medical examination and was subsequently taken to Elmhurst Hospital after it was determined he was suffering from an emergency medical condition.  After approximately two days, Williams was taken to Bellevue Hospital where he was discharged, after posting bail, on February 5, 2011.

5

33.     Williams testified in the Grand Jury on February 9 and March 22, 2011.

34.     The Grand Jury declined to indict Williams and the charges were dismissed on March 30, 2011.

35.     The charges against Wilkinson were adjourned in contemplation of dismissal on April 6, 2011.

36.     Defendants' false allegations resulted in the Administration for Children's Services seizing plaintiffs' two young children, ages 5 and 10, and placing them in foster care. To this day, defendants are fighting in Family Court, Kings County, to have their children returned to them.   The Administration for Children's Services stated to plaintiffs that they could act on defendants' allegations alone regardless of the fact that the criminal charges were dismissed.

37.     As a result of the arrests, Wilkinson lost her job as a home health aide at Americare Corporation and Williams was replaced at a barber shop where he cut hair in an independent contractor capacity.  Williams received unemployment compensation but the amount was significantly less than what she was paid at Americare.

38.     In addition to the above, plaintiffs suffered the trauma of incarceration and emotional distress, fear, anxiety, humiliation and pain and bruising.  Moreover, plaintiffs had to restore their ransacked home to its original condition, had their bottom of their sofas cut open by defendants, had to pay approximately $250 for two new door locks, and lost all of the food in their refrigerator because defendants unplugged the refrigerator when they took plaintiffs into custody.  Defendants also broke picture frames in plaintiffs' home and stole plaintiffs' cellphones.

## FIRST CLAIM

### (FALSE ARREST)

39.     Plaintiffs repeat the foregoing allegations.

40.     At all relevant times, plaintiffs had not committed a crime or violation and had not acted in a suspicious manner.

41.     Despite plaintiffs' innocence, the defendants arrested plaintiffs or failed to intervene to prevent their false arrests.

42.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for false arrest.

## SECOND CLAIM

### (UNREASONABLE FORCE)

43.     Plaintiffs repeat the foregoing allegations.

44.     Defendants' use of force upon the unresisting plaintiffs or their failure to intervene to prevent the use of force on them, as described herein, was objectively unreasonable and caused plaintiffs pain and injury.

45.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for using unreasonable force.

## THIRD CLAIM

### (UNLAWFUL ENTRY AND SEARCH OF HOME)

46.     Plaintiffs repeat the foregoing allegations.

47.     Defendants entered and searched plaintiffs' apartment without a warrant, exigent circumstances or consent, unnecessarily ransacked the premises and destroyed and stole their property as described herein.

7

48.     Accordingly, defendants are liable to plaintiffs under the Fourth Amendment for an unlawful entry and search of their home.

## FOURTH CLAIM

### (ILLEGAL STRIP SEARCH)

49.     Plaintiffs repeat the foregoing allegations.

50.     The strip search of plaintiff Williams while he was being admitted into Rikers Island was illegal because the search was conducted in front of other inmates.

51.     Accordingly, defendants are liable to Williams under the Fourth Amendment for causing him to be illegally strip searched in a non-private manner.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION)

52.     Plaintiffs repeat the foregoing allegations.

53.     Defendant Romano, pursuant to an agreement with defendant Roberts and with the acquiescence of the other defendants, maliciously misrepresented to the Kings County District Attorney's Office that Williams was found in possession of a firearm, ammunition and marijuana.

54.     Defendants' misrepresentations deprived Williams of liberty in that he was incarcerated after his arraignment and was required to appear in court after arraignment.

55.     The charges filed against Williams were ultimately dismissed.

56.     Accordingly, defendants are liable to Williams under the Fourth Amendment for malicious prosecution.

## SIXTH CLAIM

### (FABRICATION OF EVIDENCE AND DENIAL OF A FAIR TRIAL)

57.     Plaintiffs repeat the foregoing allegations.

58.     Defendant Romano, pursuant to an agreement with defendant Roberts and with the acquiescence of the other defendants, maliciously misrepresented to the Kings County District Attorney's Office that plaintiffs were found in possession of a firearm, ammunition and marijuana.

59.     Defendants' misrepresentations deprived plaintiff Williams of liberty in that he was incarcerated after his arraignment and was required to appear in court after arraignment.

60.     Defendants' misrepresentations deprived plaintiff Wilkinson of liberty in that she was incarcerated after defendants' made their misrepresentations until her arraignment and was required to appear in court after arraignment.

61.     Accordingly, defendants are liable to plaintiffs under the Sixth Amendment for fabrication of evidence and for denying plaintiffs a fair trial.

### SEVENTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

62.     Plaintiffs repeat the foregoing allegations.

63.     The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

64.     The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiffs.

65.     Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of the NYPD are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

9

66.     Several members of the NYPD have been convicted of crimes for engaging in corruption and for making false allegations.

67.     Former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison.

68.     In 2011, former NYPD Officer Jerry Bowen was convicted of murder and attempted murder while he was under indictment for corruption.

69.     In *Colon v. City of New York*, Nos. 09 CV 8, 09 CV 9 (JBW), 2009 WL 4263362 (E.D.N.Y. November 25, 2009), the federal court stated that an "[in]formal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."

70.     Defendant Romano was sued for civil rights violations in *Jacques Edouard v. City of New York, et al.*, 09 CV 4271 (E.D.N.Y.), which the City settled, and is presently being sued for civil rights violations in *Wayne Woods v. City of New York, et al.*, 10 CV 5043 (E.D.N.Y.) and *Hayden Fleming v. City of New York, et al.*, 10 CV 5875 (E.D.N.Y.).

71.     Defendant Roberts was sued for civil rights violations in *Nathaniel Barrett v. City of New York, et al.*, 05 CV 5179 (E.D.N.Y.), which the City settled.

72.     Deputy Inspector Ralph Monteforte, who was likely involved in the incident at issue, was sued for civil rights violations in *Michael Patrick v. City of New York, et al.*, 06 CV 2705 (E.D.N.Y.), which the City settled, *Laura Villanueva, et al., v. City of New York, et al.*, 08 CV 0376 (E.D.N.Y.), which the City settled, and *Kareem Wood v. City of New York, et al.*, 05 CV 2894 (S.D.N.Y.), which the City settled.

73.     Despite the above, the City exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

74.     The City's failure to act resulted in the violation of plaintiffs' constitutional rights as described herein.

## EIGHTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

75.     Plaintiffs repeat the foregoing allegations.

76.     At all relevant times, plaintiffs had not committed a crime or violation and had not acted in a suspicious manner.

77.     Despite plaintiffs' innocence, the defendants arrested plaintiffs or failed to intervene to prevent their false arrests.

78.     Accordingly, defendants are liable to plaintiffs under New York state law for false arrest.

## NINTH CLAIM

### (ASSAULT)

79.     Plaintiffs repeat the foregoing allegations.

80.     Defendants' use of force upon and searches of plaintiffs placed plaintiffs in fear of imminent harmful and offensive physical contacts which injured them.

81.     Accordingly, defendants are liable to plaintiffs under New York state law for assault.

## TENTH CLAIM

### (BATTERY)

82.     Plaintiff s repeats the foregoing allegations.

11

83.     Defendants' use of force upon and searches of plaintiffs were offensive and nonconsensual physical contacts which injured them.

84.     Accordingly, defendants are liable to plaintiffs under New York state law for battery.

## ELEVENTH CLAIM

### (TRESPASS)

85.     Plaintiffs repeat the foregoing allegations.

86.     Defendants entered and searched plaintiffs' apartment without a warrant, exigent circumstances or consent, ransacked the premises and destroyed property.

87.     Accordingly, defendants are liable to plaintiffs under New York State law for trespass.

## TWELFTH CLAIM

### (CONVERSION)

88.     Plaintiffs repeat the foregoing allegations.

89.     Defendants ransacked plaintiffs' home and destroyed property including plaintiffs' door, furniture, picture frames and groceries, and stole plaintiff's cellphones.

90.     Accordingly, defendants are liable to plaintiffs under New York State law for conversion.

## THIRTEENTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE LAW)

91.     Plaintiffs repeat the foregoing allegations.

92.     Defendant Romano, pursuant to an agreement with defendant Roberts and with the acquiescence of the other defendants, maliciously misrepresented to the Kings County

12

District Attorney's Office that Williams was found in possession of a firearm, ammunition and marijuana.

93.     Defendants' misrepresentations deprived Williams of liberty in that he was incarcerated after his arraignment and was required to appear in court after arraignment.

94.     The charges filed against Williams were ultimately dismissed.

95.     Accordingly, defendants are liable to Williams under New York state law for malicious prosecution.

## FOURTEENTH CLAIM

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

96.     Plaintiffs repeat the foregoing allegations.

97.     Defendants' actions in making false allegations about plaintiffs in order have the City of New York take their two young children taken away and placed in foster care amounted to extreme and outrageous conduct utterly intolerable in a civilized society which caused plaintiffs emotional distress

98.     Accordingly, defendants are liable to plaintiffs under New York State law for intentional infliction of emotional distress.

## FIFTEENTH

### (VICARIOUS LIABILITY CLAIM AGAINST CITY OF NEW YORK)

99.     Plaintiffs repeat the foregoing allegations.

100.    Defendants were acting within the scope of their employment as New York City Police Officers when they committed the torts of false arrest, assault, battery, trespass, conversion, malicious prosecution, and intentional infliction of emotional distress.

13

101. Accordingly, the City of New York is vicariously liable to plaintiffs under New York state law for of false arrest, assault, battery, trespass, conversion, malicious prosecution and intentional infliction of emotional distress.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Attorney's fees and costs;

d. Such other and further relief as the Court may deem just and proper.

DATED:     May 20, 2011

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391

14